UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES STEPHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01314-SEB-MKK |
| | ) | |
| SGT. HAMMER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion for Summary Judgment and Granting Other Motion**

Plaintiff James Stephens filed his complaint alleging that defendants violated his Eighth Amendment Rights when they used excessive force against him and placed him in disciplinary housing out of personal animosity. Defendants have moved for summary judgment. Dkt. [54]. For the reasons below, that motion is **granted**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572-73.

### A.  The Parties

At all relevant times, Mr. Stephens was incarcerated under Indiana Department of Correction custody at Putnamville Correctional Facility ("Putnamville"). Dkt. 15-2 at 1.

Sgt. Hammer served as a correctional sergeant, and Officer Monroe served as a correction officer at Putnamville. *Id*. at 2.

### B.  Putnamville Policy

At all relevant times, the policies governing inmate dorm maintenance were set forth in Putnamville's "Offender Handbook" (the "Handbook"). Dkt. 60-1 at 2; *see* dkt. 54-4. The Handbook provides, "No items are permitted to be stored in a manner that obstructs a full view of the offender or any bed area." Dkt. 54-4 at 4. The Handbook also states, "When issued, offender coats will be hung at the head of the bed so not to block the view of staff." *Id*. During all relevant

times, there were photos hung in the dorms showing inmates how to maintain their property if it is hanging from their beds. Dkt. 60-1 at 2. The photos showed that coats should be hung from a single bed post at the head of the bed and not draped across the headboard rail, which could obstruct an officer's view or surveillance of inmates in their beds. *Id*.

### C. Incidents in 2018 or 2019

Mr. Stephens testified that, around 7:20 a.m. one morning in 2018 or 2019, he was working in the Putnamville library when Sgt. Hammer, who was then a correctional officer, harassed him for being out of his dorm. Dkt. 54-1 at 15-17; dkt. 60-1 at 4. Mr. Stephens further testified that a library staff member heard the interaction and reported it up to Captain West, whom he believes gave Sgt. Hammer a verbal warning. Dkt. 54-1 at 16-17. Sgt. Hammer testified that he never worked for Captain West as a correctional officer, has never been reprimanded by Captain West, and did not work day shift at that time and would have completed his shift by 6:00 a.m. Dkt. 60-1 at 4.

### D. The April 5, 2022, Incident

On April 5, 2022, Officer Monroe was working in 16-Dorm, and Sgt. Hammer was working as an assigned first responder and as the assigned Dorm 15/16 Sergeant. Dkt. 54-1 at 12; dkt. 60-1 at 1. Sgt. Hammer was also the complex supervisor over 16-Dorm and three other dorms, and one of his goals was to clean up the dorms to include maintaining bed areas to Putnamville policy standards. Dkt. 60-1 at 1-2.

Inmates were warned by Officer Monroe that Sgt. Hammer would be going around to make "sure everbody's got their clothes hanging how they're supposed to be hanging. Before he comes in, you need to make sure you've got them where they're supposed to be." Dkt. 54-1 at 27. During his inspection, Sgt. Hammer told Mr. Stephen that he needed to remove his blue commissary coat

3

from hanging over the bed frame rail because it violated facility policy. *Id*. at 12; dkts. 54-5 at 1, 54-6 at 1, 54-7 at 1. Mr. Stephens did not comply with Sgt. Hammer's orders because he believed his coat hung in compliance with the Handbook. Dkt. 54-1 at 12. Sgt. Hammer told Mr. Stephens that he was confiscating the blue jacket because of his failure to follow orders and removed it from the bed. Dkts. 54-1 at 12, 54-5 at 1, 54-6 at 1. Mr. Stephens then grabbed the jacket and attempted to take it back from Sgt. Hammer. Dkts. 54-1 at 12, 54-5 at 1, 54-6 at 1, 54-7 at 1.

Sgt. Hammer ordered Mr. Stephen to submit to handcuffs, and he initially complied. Dkts. 54-1 at 12, 54-5 at 1, 54-6 at 1, 54-7 at 3. As Sgt. Hammer was escorting Mr. Stephens to the 16-Dorm dayroom, Mr. Stephens turned to right into Sgt. Hammer. Dkts. 54-1 at 13, 54-5 at 1, 54-6 at 1, 60-1 at 3. Sgt. Hammer believed Mr. Stephens was resisting the escort and ordered him to stop. Dkts. 54-1 at 13, 54-5 at 1, 3, 54-6 at 1. Mr. Stephen then turned to his right again and bumped chests with Sgt. Hammer. Dkts. 54-5 at 1, 3-4, 54-6 at 1, 60-1 at 3. Sgt. Hammer placed Mr. Stephens against the 16-Dorm officers' desk and then placed him against the wall and radioed for assistance. Dkts. 54-1 at 14, 54-5 at 1, 3, 8, 54-6 at 1. One of the responding officers then escorted Mr. Stephens first to medical and then to the disciplinary restrictive status housing unit ("DRHU") pending disciplinary conduct hearings. Dkts. 54-1 at 14, 54-5 at 1, 8, 54-8 at 1-2. Captain West authorized Mr. Stephens' placement in DRHU. Dkt. 54-6 at 3. Mr. Stephens testified that ISF implements a facility-wide policy of placing offenders in DRHU when conduct charges are pending instead of placing them in administrative restrictive status housing. Dkt. 54-1 at 34, 35.

### E. Mr. Stephens' April 5 Conduct Violations

Mr. Stephens received two conduct violations as a result of the April 5 incident, the first for physically resisting Sgt. Hammer and the second for impairment of surveillance. *Id*. at 18; dkt. 54-5 at 1, 20. Mr. Stephen pleaded not guilty to both, requested officer witnesses, and provided a

4

statement in response. Dkt. 54-5 at 6, 8-16, 22. Officer Monroe stated that Mr. Stephens' jacket did not impair his surveillance but that Mr. Stephens resisted the escort and that Sgt. Hammer used minimal force to gain compliance. Dkts. 54-5 at 2, 23, 54-6 at 5. Mr. Stephen was found guilty of resisting based on the witness statements and video surveillance review and received a written reprimand and a loss of 30 days earned credit time, which were suspended. Dkts. 54-1 at 35, 54-5 at 18. The disciplinary officer dropped the impairment offense down to disobeying orders regarding the hanging of his jacket and found him guilty based on witness statements, resulting in a written reprimand. Dkts. 54-1 at 36, 54-5 at 25.

### F. Mr. Stephens' Injuries

Mr. Stephens' complaint claims that Sgt. Hammer maliciously twisted the handcuffs too tightly before placing them on him, which resulted in injuries to his wrist. Dkt. 15-2 at 14. Mr. Stephens testified, however, that Sgt. Hammer twisted the center chain linking the cuffs, which would cause his hands to be closer together. Dkt. 54-1 at 26. Mr. Stephens further testified that he told Sgt. Hammer three times that the handcuffs were too tight and demanded for Sgt. Hammer loosen them, but he did not complain of pain or any injuries from the handcuffs at the time. *Id*. at 13. Mr. Stephens also testified that, while in the medical unit later, the nurse asked if he had any injuries other than the cuts on his wrist. *Id*. at 14. Mr. Stephens replied that he did not and asked for ice packs and Tylenol "because they're on so tight, my hands are numb, I can't feel them." *Id*. Medical records indicate Mr. Stephens suffered an abrasion to his right wrist but denied any pain. Dkt. 54-10 at 1.

## III.
## Discussion

### A. Fourteenth Amendment Claims

5

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1). "The Equal Protection Clause of the Fourteenth Amendment prohibits state and local governments from discriminating on the basis of certain protected classifications and also bars governments from treating a person irrationally as a so-called 'class of one.' " *Doe v. Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *6 (N.D. Ill. E.D. Mar. 24, 2020) (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

Mr. Stephens' arguments in this action are based upon the legal theory that he is a class-of-one plaintiff, which is but one way to assert an Equal Protection claim. Unfortunately, for Mr. Stephens, this legal theory fails. A plaintiff may pursue a "class of one" Equal Protection claim if he alleges that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008).

This is a "heavy burden." *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 877 (7th Cir. 2025). (cleaned up). When evaluating class-of-one claims, courts consider only whether a "conceivable rational basis for the difference in treatment" exists. *Id.* at 878 (cleaned up). "It is only when courts can hypothesize no rational basis for the action that allegations of animus come into play." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771 (7th Cir. 2021) (cleaned up). "Once a reason is identified, true or not true, we may look no further." Waukegan Potawatomi Casino, 128 F.4th at 878.

When the Court screened Mr. Stephens' amended complaint, it allowed him to proceed with a "claim that Sgt. Hammer had him placed in DRHU because of personal animosity against him." Dkt. 16. Sgt. Hammer argues that Mr. Stephens has not designated any admissible evidence identifying similarly situated inmates who were treated more favorably. Rather, Mr. Stephens testified that similarly situated inmates are housed in the DRHU pending disciplinary conduct hearings. Dkt. 54-1 at 14. The Court agrees with Sgt. Hammer.

In his response, Mr. Stephens states that there was one similarly situated inmate, who also had his jacket hanging over his bed frame rail on April 5, but Sgt. Hammer said nothing to him. Dkt. 70 at 12-13. Surveillance video screen captures, however, show that this inmate complied with the policy and removed his jacket from the bed frame rail rather than refuse to correct it and then refuse to hand it over. *See* Dkt. 54-7 at 1-2. Mr. Stephens, therefore, has not found a similarly situated inmate. Moreover, Mr. Stephens was placed in the DRHU not for the jacket hanging violation, for which the undisputed evidence shows that Sgt. Hammer only intended to confiscate Mr. Stephens' jacket. Dkts. 54-1 at 12, 54-6 at 1. Instead, Mr. Stephens was placed in handcuffs only after he began resisting the confiscation. Dkts. 54-1 at 14-15, 54-5 at 8.

Accordingly, Sgt. Hammer is entitled to summary judgment on this claim, and defendants' summary judgment motion is granted as to Mr. Stephens' Equal Protection class-of-one claims against Sgt. Hammer.

### B. Excessive Force and Failure to Intervene Claims

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam) (cleaned up). Even if the

7

force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

"An officer who fails to intervene to try to prevent known cruel or unusual force, despite a reasonable opportunity to do so, may be held liable under [42 U.S.C.] § 1983." *Wilborn v. Ealey*, 881 F.3d 998, 1007 (7th Cir. 2018). A plaintiff prevails on a failure-to-intervene claim by proving that the defendants "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis*, 581 F.3d at 472.

The undisputed evidence shows that Mr. Stephens disobeyed an order, although it was one with which he disagreed, and that he complied with Sgt. Hammer's orders to submit to handcuffs. Dkts. 54-1 at 12, 70 at 6. "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them . . . Inmates are and must be required to obey orders." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) (internal citations omitted); *see also Thompson v. Surguy*, 2022 WL 3357898 at *5 (S.D. Ind. Aug. 15, 2022) (citing Seventh

8

Circuit Pattern Jury Instruction 7.18: Eighth Amendment: Excessive Force Against Convicted Prisoner–Elements ("An officer is entitled to use some force if a prisoner disobeys a valid command")).

The amount of force used was minimal and his injuries were minor. The evidence in the record shows that Sgt. Hammer placed an initially compliant Mr. Stephens in handcuffs and, when he believed Mr. Stephens was resisting, placed him first against a desk and then against a wall to reassert control. Dkts. 54-1 at 13-14 54-5 at 1, 3-4, 8, 54-6 at 1, 60-1 at 3. Mr. Stephens did not complain of any pain during the escort, and a medical exam immediately after the incident showed that Mr. Stephens suffered an abrasion on one wrist and reported no pain. Dkts. 54-1 at 13-14, 54-10 at 1. He testified that his hands were numb afterward. Dkt. 54-1 at 26. Temporary loss of circulation resulting in numbness.

"A prisoner cannot prevail under the Eighth Amendment because he 'reasonably believed his handcuffs were too tight causing momentary interruption of his circulation." *United States v. Waldman*, 835 F.3d 751, 755 (7th Cir. 2016) (internal citations omitted). Moreover, a prisoner cannot show excessive force when he suffered only de minimis injuries such as a "small abrasion." *Green v. Hallam*, 105 F. App'x 858, 861, 863 (7th Cir. 2004).

Turning to the last two factors, there is no evidence in the record that calls Sgt. Hammer's perception of the threat into question, and evidence shows that he tempered his response. Video surveillance screen captures show Sgt. Hammer in a large open bay with several inmates and no other correctional officers on the floor. *See* dkt. 54-7. A disciplinary hearing officer found that Mr. Stephens did physically resist by trying to turn into Sgt. Hammer and by pushing his shoulder into Sgt. Hammer during the escort. Dkt. 54-5 at 7, 18. The undisputed evidence shows that Sgt. Hammer's perception of the threat was reasonable when he initially handcuffed Mr. Stephens and

again when he put his arm across Mr. Stephens and guided him first into a desk and then the wall in order to maintain control. Moreover, as soon as he was able, Sgt. Hammer radioed for support and released Mr. Stephens to the control of another officer. Dkts. 54-1 at 14, 54-5 at 1, 3, 8, 54-6 at 1. The entire encounter lasted only approximately one minute. Dkts. 54-6 at 1, 54-7 at 3 (showing responding officer took over escort approximately one minute after the incident).

There is no evidence in the record from which a jury could infer that Sgt. Hammer's use of force was unlawful. *McCottrell*, 933 F.3d at 663. Additionally, to the extent Mr. Stephens alleges that Officer Monroe violated his rights by failing to intervene in Sgt. Hammer's use of force, no such claim can survive because the use of force was entirely lawful. *See Turner v. City of Champaign*, 979 F.3d 563, 571 (7th Cir. 2020) (There can be no failure to intervene if there is no excessive force.).

Accordingly, defendants are entitled to summary judgment on Mr. Stephens' excessive force and failure to intervene claims.

C. **State Law Claims**

With Mr. Stephen's constitutional claims staged for dismissal, the Court has discretion whether to exercise supplemental jurisdiction over his remaining state-law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . ."); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is entirely discretionary."). "Indeed, when the federal claims are dismissed before trial, *there is a presumption* that the court will relinquish jurisdiction over any remaining

state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (emphasis added).

When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and quoted authority omitted).

In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and quoted authority omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation marks and quoted authority).

No circumstance in this case overcomes the presumption that the Court should relinquish jurisdiction over Mr. Stephen's state-law claims.

The statute of limitations is not a factor. Both federal and state law toll the relevant limitation period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).

The Court has not expended significant resources on the pending state-law claims. The Court does not expect that the parties' discovery and briefing efforts with respect to the state law claims will go to waste. Rather, the evidence and legal research they have uncovered should be every bit as relevant in a state-court proceeding.

Finally, comity always favors allowing state courts to decide issues of state law.

Having resolved all claims within its original jurisdiction, the Court exercises its discretion and relinquishes supplemental jurisdiction over Mr. Stephen's state law claims.

## IV.
## Conclusion

Defendants' motion for summary judgment is **granted**. Dkt. [54].

Final judgment will issue in a separate entry.

To the extent this Order informs Mr. Stephens that defendants are entitled to summary judgment, his motion for ruling on motion for summary judgment, dkt. [78], is **granted**.

**IT IS SO ORDERED.**

Date:  9/8/2025

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES STEPHENS
996056
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

All electronically registered counsel of record